By the Court.
However wide may have been the difference between the original cases out of which these proceedings in error arose, judgments of reversal were rendered by the circuit courts in both cases because of the misconduct of counsel for the prevailing parties, and the propriety of the judgments of reversal should be tested'"by considerations which are substantially identical. In both cases the misconduct for which the circuit court reversed the judgments consisted of remarks, obviously improper, which counsel made in presenting the case to the jury. Remarks of counsel to jury always constitute misconduct when they either tend to diminish respect for the administration of justice or to subject the claims of the adverse party in the *152 case to prejudice not warranted by the case actually presented for determination. But misconduct of the former character may constitute a very grave offense against the administration of justice without entitling the adverse party to a new trial if he suffers only in common with his fellows, all of whom are entitled to have proceedings in courts conducted with such decorum and propriety as to win the respect of all observers. For offenses of that character a new trial is an expensive and inappropriate remedy to which the judge of the trial court is not driven by any necessity, there being within his power modes of correction which will both secure the orderly conduct of procedure and avert the delays incident to mistrials. But for such remarks as naturally induce a jury to test the case of the adverse party by considerations not presented in or suggested by the evidence a new trial is the indispensable corrective if such improper effect is not averted by the court or counsel or both. The records show that misconduct of both kinds was committed in the trial courts in the present cases.
In the case firstly entitled, Miss Driscoll recovered a judgment in the trial court against the traction company for a personal injury alleged to have been received by her while a passenger on one of its cars caused by the negligent starting of the car by the conductor while she was in the act of alighting therefrom. In addressing the jury after the testimony had been adduced her counsel said: “Of course, he paid no attention to her. He rang the bell thinking she was off. just as it happens every day, the car started before she was off and *153 this accident happened.” Assuming that evidence of other incidents of like character would have been competent there was no evidence of such other incidents in the case. Objection to the remark was promptly made by counsel for the company, in response to which counsel for Miss Driscoll as promptly said: “Gentlemen of the jury, disregard my remarks,” and the court admonished them that the evidence to establish the facts of the case could come only from the witness stand.
It is entirely obvious that this observation, of counsel unsupported by any evidence in the case tended to the prejudice of the defendant. What could be done to avert its natural effect was promptly done by both offending counsel and by the court. The withdrawal of the remark by counsel and the admonition of the court certainly informed the jury that the remark so improperly made should not have any influence whatever in determining their verdict. The proceedings of courts frequently require the conclusive assumption that jurors regard the instruction of the court as to matters of this character. If, over the objection of counsel for the traction company, evidence of other like incidents had been admitted and the court had subsequently concluded that the admission was improper and had directed the jury to disregard it, it would hardly be doubted that the instruction to disregard the evidence would have cured the error in its admission. And we cannot say, nor could the circuit court say, that effects of .the improper remark of counsel remained in the case to operate to the prejudice of the defendant.
*154 In the same case counsel for the traction company requested several special instructions to be given to the jury which were given by the court. In his address to the jury counsel for the plaintiff referring to these special instructions, said: “They run in here a lot of charges that you want to watch very carefully.” To this characterization of one of the appointed modes of getting instructions to juries, counsel for the defendant naturally objected. That it constituted misconduct can hardly be doubted, but that it would operate to the prejudice of the traction company in the case is not apparent. So that, as to the improper remarks firstly quoted, we think their effect should have been regarded as averted by the retraction of counsel and admonition of the court, and as to the observation lastly quoted, that it did not prejudice the defendant in the trial.
In the other original case, Tuttle was placed on trial upon an indictment for an assault upon a woman. In his defense much reliance was placed upon testimony tending to separate him from the assault by so short a distance that precision as to time was quite necessary. The witnesses upon this point were quite noticeably precise, and some of them explained their precision by testifying to their observation of the strokes of a clock in the neighborhood and their recollection thereof at the time of trial, although Tuttle was not accused for several days after the assault. It appeared from the evidence that shortly before the trial was entered upon counsel for the accused were in the neighborhood interviewing persons who were supposed to be informed as to his presence in that *155 neighborhood at the time of the assault with a view to calling them as witnesses. There was no testimony in the case whatever to show that they took any improper steps to secure testimony. In the closing argument on behalf of the state to the jury, as we gather from a record that does not seem to have been very carefully prepared, counsel for the state made some insinuations against the propriety of the conduct of adverse counsel in that behalf. He was engaged at the time in pressing upon the attention of the jury the efficacy of suggestion in starting the belief that one has observed what in fact he has not observed and that he remembers what in fact he does not remember. The psychological law suggested is within the observation of all of us and comment upon it was strictly within the function of counsel for the state. To the proper effect of legitimate comment upon that subject no force would be added by insinuations against the propriety of the conduct of counsel for the accused, and the misconduct appears to be only an offense against the decorous administration of justice, but without special prejudice to the accused.
One cannot read records of this character without sincere regret that honorable and intelligent counsel should become so consumed with a desire for victory as to discredit the modes appointed by the law for the ascertainment of truths which are involved in the administration of justice. Extended comment upon these cases does not seem to be necessary. None of the counsel involved can think for a moment that those who observed the administration of justice in these cases bore away *156 from the courtroom as miich respect for the administration of justice as they had brought with them when they entered it.
. But in view of the considerations suggested thus briefly, we think the misconduct did not, in either case, justify a. judgment of reversal. In both cases the judgment of the circuit court will be reversed and the original judgment affirmed.

Reversed.

Shauck, C. J., Johnson, Donahue, WanAmakee, Newman and Wilkin, JJ., concur.